### J. G. WILBOURN ET AL. v. ALICE V. SHELL ET AL.

1. WILL. *Destruction by testator. Intention. Inoperative substitute.*
   If, in order to correct the spelling in his holographic will and make it more legible, the testator has it copied, and attempts to execute the copy, which proves defective from want of sufficient attestation, the original, although destroyed by him, should be admitted to probate.
2. SAME. *Proof of destroyed will. Testamentary intent. Single witness.*
   The contents of the will may be proved by the copy after it is shown to be accurate ; and the testator's attempted execution and his preservation of the copy is such evidence that the original, which was complete and not provisional, was his will, that, with his declaration to that effect, the testimony of the copyist, who is disinterested and credible, and corroborating circumstances, it will justify the probate.

APPEAL from the Chancery Court of Panola County.
Hon. J. B. MORGAN, Chancellor.

Two sons of Elijah Wilbourn, the appellants, who were the devisees of all his land, petitioned for the probate of the holographic will mentioned in the opinion, and citations issued for the other heirs. The appellees answered, and, upon the

evidence at the final hearing, the Chancellor decreed that the instrument attested by J. F. Hobgood and another witness was the true will, and dismissed this petition.

*L. C. Balch*, for the appellants.

A lost or destroyed will cannot be established, if this evidence fails to prove that the original paper was Elijah Wilbourn's will. Hobgood's testimony is conclusive. He is disinterested and above suspicion. The contents of the lost will are proved beyond a doubt. Did Wilbourn revoke this will by his attempt to execute the copy? A devise of real estate is not revoked by a subsequent will attested so as to pass only personal property. A good will cannot be revoked by a bad one. Code 1871, §§ 2388, 2389; *Vining* v. *Hall*, 40 Miss. 83. Destruction of the holographic will was no revocation, because not so intended by the testator. *Hairston* v. *Hairston*, 30 Miss. 276. He believed that he had his will in duplicate and that both copies were unnecessary. In this he was mistaken. If his intention was to revoke his will, why did he still preserve the copy·? *Murray* v. *Murphy*, 39 Miss. 214; 1 Williams on Executors, 120–125; 1 Lomax on Executors, 42, 45.

*Taylor & Kyle,* on the same side.

As the destruction of the holographic will was under the impression that the new will was valid, when it was void, because three witnesses were essential, Code 1871, § 2388, the original will remains in force. 1 Jarman on Wills, 294. After a will is executed, it is not affected by destruction, unless there is an intention to revoke. *Bethell* v. *Moore*, 2 Dev. & Bat. 311; *Stover* v. *Kendall*, 1 Cold. 557; *Barksdale* v. *Barksdale*, 12 Leigh, 535; *Jackson* v. *Holloway*, 7 John. 394; *Pringle* v. *M'Pherson*, 2 Brev. 279; *Hairston* v. *Hairston*, 30 Miss. 276; *Banks* v. *Banks*, 65 Mo. 432; *Wolf* v. *Bollinger*, 62 Ill. 368.

*Hall & Boothe*, for the appellees.

It was not proved that Elijah Wilbourn executed the paper alleged to be his holographic will, or that he did so *animo testandi*. A single witness cannot prove these facts. *In re Johnson's Will*, 40 Conn. 587. The proof must be of the most satisfactory character and conclusive. *Vining* v. *Hall*, 40

Miss. 83; *Davis* v. *Sigourney*, 8 Met. 487; 3 Redfield on Wills, 15. A paper, perfect in form as an holographic will, is not such in the absence of testamentary intent. *Marr* v. *Marr*, 2 Head, 303; *Douglass* v. *Harkrender*, 3 Baxter, 114. Even if it were the testator's will, he revoked it by executing the other. The legal presumption to that effect has not been overcome by evidence. 1 Redfield on Wills, 307, 328–330; *McBeth* v. *McBeth*, 11 Ala. 596; *Weeks* v. *McBeth*, 14 Ala. 474; *Bonds* v. *Gray*, Ga. Dec. Pt. 2, 136; *Lively* v. *Harwell*, 29 Ga. 509; *Holland* v. *Ferris*, 2 Bradf. 334; *Durant* v. *Ashmore*, 2 Rich. 184; *Brown* v. *Brown*, 10 Yerger, 84; *Minkler* v. *Minkler*, 14 Vt. 125; *Appling* v. *Eades*, 1 Gratt. 286.

COOPER, J., delivered the opinion of the court.

The questions upon the decision of which this clause must turn are three: First, Was the paper presented by Wilbourn to Hobgood, in the year 1877, for the purpose of having a copy thereof made, his holographic will? Second, Are the contents of said instrument sufficiently proved to entitle it to probate? Third, If this paper was the will of Wilbourn, and its contents have been sufficiently proved, was it subsequently destroyed by him, *animo revocandi* absolutely, or was it a case of conditional relative revocation? We shall be aided in a solution of the first question by considering first the inquiry secondly above noted; for, if it be true that the contents of the paper have been sufficiently proved, we are at liberty to consider its provisions, for the purpose of discovering the intentions of the testator in executing the instrument, and also in his subsequent execution of the second writing and his destruction of the first.

In determining this question we experience little difficulty, for the witness who testified as to the contents of the instrument is wholly disinterested, and not only had the best means of knowing the facts to which he testified, but is supported by the undisputed fact that the decedent attempted to execute as his will a paper which he at least considered as containing the identical provisions found in the first. The decedent brought to the witness Hobgood the original, for the purpose of getting him to make a legible and correctly spelled copy,

and immediately attempted to execute the copy so made as his will, and as a copy of the original. This act of the decedent, if not a declaration by him of the fact that the one paper was a copy of the other, is strongly corroborative of the testimony of the witness; for we cannot presume that a person intent on the execution of so important an instrument would, with both papers in his hands, neglect to inform himself of the correctness of the one which he expected should carry into effect his testamentary wishes as expressed in the other. It would, in most cases, be impossible to prove the contents of lost instruments, if the evidence in this case should be held insufficient. The identity of the copy is fixed beyond dispute; the circumstances under which it was written suggest that care was taken in its preparation; it was immediately acted upon by the person principally interested as a correct copy; and its accuracy is attested by the testimony of a wholly disinterested and intelligent witness. The evidence leaves in our minds no doubt that the original was written by the testator (as he declared to the witness it was), that it was subscribed by him, and that the copy made by the witness was a correct copy of the same.

Was this original paper the will of the said Wilbourn? That it was, we think is clearly shown by the facts that the paper was declared by the testator, in his conversation with the witness, to be his will; that it was in form a completed instrument, evidencing a determinate, definite purpose on the part of the. maker, and not in form preliminary or provisional; that it was preserved by the writer from November, 1876, to some time in the autumn of 1877 (a care which would hardly be given to a mere memorandum of such simple provisions as are noted in it); and, finally, that it contained precisely the disposition of his estate which the testator attempted to make by his execution of. the copy written by the witness Hobgood.

Was this will revoked by the testator? The legal presumption is, that a will which was in the possession of the testator, but which cannot be found after his death, was destroyed by him *animo revocandi.* 1 Redfield on Wills, 328; 1 Jarman on Wills, 270, and authorities cited in note 13. But the material inquiry in all cases is, whether the destruc-

tion of the will was *animo revocandi*, and to determine this it is necessary to consider the circumstances under which and the purposes and reasons for which it was destroyed; and where from all the circumstances in evidence it appears that the destruction or revocation was connected with, or because of, the execution of another will, and that the testator meant the revocation of the one to depend upon the validity of the other, then if the latter will is inoperative, from defect of attestation or other cause, the revocation fails also, and the original will remains in force.   *Hairston* v. *Hairston*, 30 Miss. 276; *James* v. *Shrimpton*, L. R. 1 P. D. 431; *Barksdale* v. *Barksdale*, 12 Leigh, 535; *Onions* v. *Tyrer*, 1 P. Wms. 343; 1 Jarman on Wills, 294.

From a consideration of all the facts in evidence, we are satisfied that the testator destroyed his holographic will, under the belief that the copy thereof executed by him was a valid will, and not with the intention of dying intestate as to his lands.   It is inconceivable that one would preserve for a year an instrument as his will, and then procure a copy of it to be made, and execute the copy with the intention of making that his will, and then destroy the original and retain carefully the copy, for the purpose and with the intention of dying intestate.   If the execution of the copy had been attested by three instead of two witnesses, it would have been a valid will. Being inefficient because of the want of attestation, a revocation of the prior will, made by the testator under a belief in its validity, is conditional and not absolute, and the condition having failed, the original is in law still the existing will of the testator, and is entitled to probate.

The decree is reversed and cause remanded, with instructions to the Chancery Court of Panola County to admit to probate the copy as proved.

*Decree accordingly.*